AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>TORRAY NICARD MAXWELL<br><br>Defendant(s) | Case No.  3:23-mj-1402-JBT |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 22, 2023__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C §§ 846 & 841(a)(1) | Attempt to possess with intent to distribute a controlled substance |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

_Complainant's signature_

Christopher J. Note, Special Agent, HSI
_Printed name and title_

Sworn to before me and signed in my presence. /AT by telephone.

Date: 8/29/23

_Judge's signature_

City and state: Jacksonville, Florida        Joel B. Toomey, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT

I, Christopher J. Note, being first duly sworn, hereby depose and state as follows:

1.  I am a Special Agent (SA) with Homeland Security Investigations (HSI), formerly known as U.S. Immigration and Customs Enforcement. I am currently assigned to the Office of the Assistant Special Agent in Charge, Jacksonville, Florida. I have been a Special Agent with HSI for 20 years and prior to that I was an Immigration Agent and Special Agent with the Immigration and Naturalization Service (INS) for 7 years. I am a law enforcement officer of the United States and am thus authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of violations of federal criminal law. I am responsible for enforcing federal criminal statutes under the jurisdiction of United States Immigration and Customs Enforcement, including the titles and sections incorporating money laundering, customs laws, and drug violations. I have attended the Basic Criminal Investigator School and the United States Immigration and Customs Enforcement Academy at the Federal Law Enforcement Training Center in Brunswick, Georgia, and I have received training from ICE in customs laws, more specifically smuggling and financial investigations. In my capacity as a Special Agent, I have participated in numerous types of investigations, during which I have conducted or participated in physical surveillance, undercover transactions, executions of search and arrest warrants, controlled delivery transactions of narcotics

domestically and internationally, reverse undercover operations, historical investigations, extradition cases, and other complex investigations. As part of my duties, I investigate potential violations of federal law, including Title 21, United States Code, Sections 846 & 841(a), which prohibits, among other crimes, the attempt to possess with intent to distribute a controlled substance, distribution of a controlled substance, and possession with intent to distribute a controlled substance.

2. This affidavit is based upon my personal knowledge, experience, and training, and other information developed during the course of this investigation. This affidavit is also based upon information and experience imparted to me by other law enforcement officers. Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that Torray Nicard MAXWELL has committed the violation of Title 21, United States Code, Sections 846 & 841(a)(1), that is, an attempt to possess with intent to distribute a controlled substance.

3. Based upon my training and experience, I am familiar with the manner in which narcotics and other controlled substances are obtained, packaged, transported, and distributed. One common method of smuggling drugs and drug proceeds is to hide the contraband in vehicles that are transported via car haulers. This often involves the use of traps and hydraulic compartments inside vehicles, which are used to conceal the contraband.

2

4. On August 22, 2023, HSI SA Carlos Delgado, an SA in San Diego, California, notified me that he had information about a vehicle, a black Chevy Tahoe, being transported on a car hauler from San Diego, California to Jacksonville, Florida suspected of concealing narcotics. SA Delgado informed me that the driver of the car hauler is cooperating source (CS) with law enforcement, who SA Delgado deems reliable based on prior information provided, and provided me with the CS's name and cell phone number.

5. On August 22, 2023, I made arrangements with the CS to meet me in a large parking lot near 7890 Normandy Blvd, Jacksonville, Florida. I met with the CS, and the CS informed me that he was suspicious of the people from whom he picked up the black Tahoe because of a previous haul he made delivering what he believed was the same vehicle from San Diego to Georgia.

6. At my request, FHP Trooper Chris Karpinski and his K-9 Sumi came to the Normandy Boulevard location and conducted a free air sniff around the vehicle. Trooper Karpinski informed me that K-9 Sumi alerted to the presence of narcotics in the back passenger side quarter panel. Trooper Karpinski and I inspected the back of the Tahoe. Trooper Karpinski discovered what appeared to be bricks of narcotics hidden in the wheel well of the black Tahoe.

7. Shortly thereafter, on August 22, 2023, the CS agreed to deliver the black Tahoe to the destination the client had given him, which was 11130 Lem Turner Road, Jacksonville, Florida 32233. I, along with a marked Jacksonville

3

Sheriff's Office (JSO) Patrol Unit, followed the car hauler to the meeting location. Other HSI Agents and JSO officers were set up around that location to conduct surveillance.

8. On August 22, 2023, at approximately 3:30 pm, the car hauler arrived at the Lem Turner Road location. At approximately 3:45 pm, Agents observed a gray Acura park next to the car hauler. A tall, thin, black male with a white shirt and white shorts, later identified as Torray Nicard MAXWELL, got out of the gray Acura front passenger seat, and met with the CS. At that point, there was one other car on the car hauler, a white Honda sedan. I observed MAXWELL walk around the car hauler looking at the black Tahoe only and ignoring the white Honda sedan, and then converse again with the CS. MAXWELL paid the CS $1500 in cash. According to the CS, the CS asked MAXWELL if he was "Dwayne," the name listed as the consignee on the transport invoice for the black Tahoe, and if he was there to pick up the Tahoe. MAXWELL affirmed, and told the CS that he was "Dwayne." Once the CS got back into the cab of his truck, Agents approached MAXWELL and detained him.

9. On August 22, 2023, at approximately 4:04 pm, I read MAXWELL his Miranda Rights from a pre-printed card. MAXWELL waived his right to remain silent. MAXWELL immediately stated that he "could be killed for this," which was before he was told why he was being detained.

10. I asked MAXWELL what he was talking about. MAXWELL then

4

stated that he did not know anything about the black Tahoe. MAXWELL claimed that an individual he had in his cell phone under the name "General" called him and told him to go to meet with the driver of the car hauler, and that "General" gave him the money to give to the driver of the car hauler. MAXWELL then stated that he did not know which vehicle he was picking up. However, according to the CS, the CS asked MAXWELL if he was "Dwayne," and if he was there to pick up the Tahoe. The CS stated that MAXWELL told the CS that he (MAXWELL) was there to pick up the Tahoe.

11. In addition, Agents observed MAXWELL converse with the CS, then only inspect the black Tahoe while it was on the car hauler.

12. I asked MAXWELL if I could look at his cell phone. MAXWELL gave me the pass code for his cell phone. I told MAXWELL I was going to have him sign a consent form to search the cell phone before I looked at it. When I asked MAXWELL to sign the consent form, he refused. I then placed the cell phone into an HSI evidence bag. While I was still talking to MAXWELL, the individual named "General" in MAXWELL's cell phone kept texting MAXWELL telling MAXWELL to call him. These messages popped up on the locked screen each time "General" sent a text message to MAXWELL.

13. On August 22, 2023, at approximately 5:30 pm, Agents recovered approximately 15 bricks of what appeared to be cocaine from the black Tahoe, which were hidden in a hydraulic trap in the right rear quarter panel. The 15 bricks weighed

5

a collective 19.1 kilograms with packaging.

14. A field test on scene of one brick indicated positive for the presence of fentanyl. A further field test performed with a more sophisticated Gemini testing machine at the Customs and Border Protection (CBP) warehouse indicated that the same brick field tested on scene, and a second brick from the seizure, indicated positive for the presence of cocaine.

15. On August 25, 2023, I obtained jail calls from the Duval County Detention Center, including a phone call to a bondsman. During the call with the bondsman, the bondsman asked MAXWELL what the charge was. MAXWELL told the bondsman (in substance) that he went to "pick up a truck for somebody today." On a video call with an individual with the initials E.H.A., MAXWELL mentioned fentanyl and then stated, "I never signed for nothing, I never touched it, I never opened the door."

16. On August 25, 2023, I obtained a federal search warrant from United States Magistrate Judge Joel B. Toomey for MAXWELL's cell phone, a black Samsung Smart phone.

17. On August 26, 2023, I reviewed a forensic copy of MAXWELL's black Samsung cell phone and discovered a contact listed as "Prentto General" in the phone. The call log indicates that MAXWELL spoke with this individual twice during the day of MAXWELL's arrest, and that this individual attempted to call MAXWELL four times within six minutes after MAXWELL's arrest. In addition, I

saw two text messages on WhatsApp before the last of the four missed phone calls. The first text message reads, "Yow answer tge phone." The next WhatsApp chat message reads, "answer the phone." Then, the individual attempted the fourth call to MAXWELL.

18. Based on the foregoing facts, I believe there is probable cause that Torray Nicard MAXWELL has committed the offense of an attempt to possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, 841(a)(1), & 841(b)(1)(C).

_____
Christopher J. Note
Special Agent
Homeland Security Investigations

Sworn and subscribed ~~before me~~ by telephone
this 29 day of August 2023:

BY THE COURT:

_____
JOEL B. TOOMEY
United States Magistrate Judge

7